# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KEESHA SMITH | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 7034 |
| | ) | |
| v. | ) | District Judge Robert M. Dow, Jr. |
| | ) | |
| BOARD OF EDUCAITION OF, | ) | Magistrate Judge Jeffrey Cummings |
| THE CITY OF CHICAGO | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Keesha Smith has brought a motion to compel defendant Board of Education of the City of Chicago to produce 18 documents that the Board has withheld or redact based upon the attorney-client and/or work product privileges. These documents are e-mails dated from March 3, 2017 to April 6, 2017 that were exchanged between Mary Ernesti - - an attorney who holds a position within the Board's Office of Employee Engagement - - and other members of the Board's management. Plaintiff asserts that the documents are not privileged because they concern business-related advice that Ms. Ernesti was providing in her capacity as a human resources professional (and not as an attorney representing her client). Plaintiff further asserts that work product privilege does not protect the documents over which the Board has asserted the privilege because they were not prepared in anticipation of litigation.

As the party claiming that its documents are privileged, the Board has the burden of proving that at least one of the privileges is applicable to each document. *See, e.g., BankDirect Capital Finance, LLC v. Capital Premium Finance, Inc.,* 326 F.R.D. 176, 180 (N.D.Ill. 2018). The Board asserts in its amended first privilege log (Dkt. 72-1) that: (1) all of the e-mails are protected by the attorney-client because they were created for the proposes of receiving and

1

providing legal advice relating to the discipline of plaintiff; and (2) a number of the e-mails generated between March 3, 2017 and March 24, 2017 are also protected by the work product privilege because they were created in anticipation of litigation. Pursuant to this Court's May 28, 2019 Order, the Board provided the documents in question to the Court for an *in camera* review.

I. **The Board Has Largely Failed To Meet Its Burden Of Establishing That The E-Mails Are Protected By The Attorney-Client Privilege**

The attorney-client privilege applies:

> (1) where legal advice of any kind is sought; (2) from a professional legal advisor in h[er] capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection can be waived.

*United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir. 1997) (internal quotation marks omitted). "The claim of privilege cannot be a blanket claim; [rather,] it must be made and sustained on a question-by-question or document by document basis." *United States v. White,* 950 F.2d 426, 430 (7th Cir. 1991) (internal quotation marks omitted). Furthermore, 'because the privilege is in derogation of the search for the truth, it is construed narrowly." *Evans,* 113 F.3d at 1461; *White,* 950 F.2d at 430.

Although "[t]he attorney-client privilege has long been understood to protect corporate clients and counsel," *RBS Citizens, N.A. v. Husain,* 291 F.R.D. 209, 216 (N.D.Ill. 2013), "[t]here is no presumption that a company's communications with counsel are privileged." *EEOC v. BDO USA, L.L.P.,* 876 F.3d 690, 696 (5th Cir. 2017). Indeed, "[i]t goes without saying that documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer." *BankDirect,* 326 F.R.D. at 180 (internal quotation marks omitted); *BDO USA,* 876 F.3d at 696. Instead, the "privilege is limited to situation in which the

attorney is acting as a legal advisor – business and financial advice are not protected." *RBS Citizens,* 291 F.R.D. at 216 (citing to *Burdon-Meeks v. Welch,* 319 F.3d 897, 899 (7th Cir. 2003)); *BDO USA,* 876 F.3d at 696. Consequently, "communications by a corporation with its attorney, who at the time is acting solely in h[er] capacity as a business advisor, [are not] privileged." *BDO USA,* 876 F.3d at 696 (internal quotation marks omitted).

This Court acknowledges that the "expanded role of legal counsel within corporations has blurred the lines between business and legal advice" and that it is not always easy to discern how advice from a person who happens to be an attorney should be characterized. *RBS Citizens,* 291 F.R.D. at 217 (internal quotation marks omitted); *BankDirect,* 326 F.R.D. at 181. Nonetheless, courts presume that where in-house counsel is involved, "the attorney's input is more likely business rather than legal in nature," *Lindley v. Life Investors Insurance Co. of America,* 267 F.R.D. 382, 389 (N.D.Okla. 2010), *aff'd in part as modified,* No. 08-CV-0379-CVE-PJC, 2010 WL 1741407 (N.D.Okla. Apr. 28, 2010) (citing cases), and "communications by a corporation with its attorney, who at the time is acting solely in h[er] capacity as a business advisor, [are] not privileged." *Neuder v. Battelle Pacific Northwest National Laboratory,* 194 F.R.D. 289, 292 (D.D.C. 2000) (internal quotation marks omitted); *BDO USA,* 876 F.3d at 696 (same). Consequently, "[w]hen an attorney serves in a non-legal capacity . . . h[er] advice is privileged only upon a clear showing that [s]he gave it in a professional legal capacity." *Marten v. Yellow Freight System, Inc.,* No. CIV. A. 96-2013-GTV, 1998 WL 13244 at *9 (D.Kan. Jan. 6, 1998); *Lindley,* 267 F.R.D. at 390; *Neuder,* 194 F.R.D. at 295.

In this case, the Board asserts that the e-mails are protected by the attorney client privilege because they involve communications to and from attorney Mary Ernesti regarding plaintiff's discipline and termination. Although Ms. Ernesti reports to the Board's General

Counsel, she is employed as the Director of the Board's Office of Employee Engagement. The mission of the Board's Office of Employee Engagement "is to ensure effective administration of employee grievances, collective-bargaining provisions, Board policies and rules, and employee discipline to facilitate compliance with statutory and contractual requirements. [The Office's] main duties include advising principals and other supervisors on employee discipline issues, presiding over discipline hearings, and investigating and adjusting grievances filed by labor unions." Dkt. #66, at 13.

The Court has conducted an *in camera* review of the documents in question and it finds that the communications contained therein (with the exception noted below in footnote 2) concern the process by which plaintiff was placed on a performance improvement plan ("PIP") and ultimately terminated for what the Board considered to be unacceptable conduct. The Court finds that Ms. Ernesti's communications on these e-mails constituted non-privileged business advice for the following reasons. First, decisions concerning the discipline and termination of employees are business decisions and "any legal advice sought or received is incidental to considerations of what is most prudent for the successful operation of the business." *Neuder,* 194 F.R.D. at 293-94 (citing to *Marten,* 1998 WL 13244 at *8); *Sigler v. Ricoh Americas Corp.,* No. SACV0801139AGANX, 2009 WL 10698890 at *3 (C.D.Cal. July 9, 2009) ("The decision to terminate an employee constitutes a business, not legal, decision"); *see also BDO USA,* 876 F.3d at 693-94, 696-97 (reversing decision that all communications between a corporation's HR manager and its counsel concerning, among other things, the manager's investigations of discrimination complaints and how to carry out her HR duties were *per se* protected by the attorney-client privilege).

Second, notwithstanding the Board's characterizations in its amended privilege log,[1] the input that Ms. Ernesti was requested to provide or provided in these e-mail chains - - which concerned, for example, the scheduling of meetings (BOE 361) and the contents of plaintiff's PIP and discipline (BOE 367, 368) - - does not fit within the definition of privileged legal advice. *See, e.g., Lindley,* 267 F.R.D. at 390 ("Privileged material has been defined as (1) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding") (internal quotation marks omitted); *In re Grand Jury,* 475 F.3d 1299, 1304 (D.C.Cir. 2007) (same); *Board of Education of Evanston Township v. Admiral Heating and Ventilating, Inc.,* 104 F.R.D. 23, 34 (N.D.Ill. 1984) (same).[2]

Furthermore, the cases cited by the Board are factually distinguishable. In *Kodish v. Oakbrook Terrace Fire Protection District,* 235 F.R.D. 447 (N.D.Ill. 2006), for example, an attorney attended a closed session meeting of defendants' board where the decision to terminate the plaintiff was discussed. The court held that "the mere attendance of an attorney at [the] meeting d[id] not render everything said or done at the meeting privileged." *Id.,* at 453. Indeed, the discussions regarding plaintiff's work history, the reasons for defendants' decision to terminate him, and defendants' expectations from an employee were *not* privileged and the court found that only the "conversations among the board members and their attorney about potential

---

[1] The Board repeatedly states that the e-mails either request "legal advice" from Ms. Ernesti or that Ms. Ernesti is providing "legal advice" to other members of the Board's management (Dkt. 72-1). However, courts have repeatedly held that "simply describing a lawyer's advice as 'legal',' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege." *See BDO USA,* 876 F.3d at 696; *Neuder,* 194 F.R.D. at 297 ("a statement that legal advice was given is not a sufficient basis for claiming a privilege when the document does not reflect that legal advice was given").

[2] There is one exception to this finding. In the e-mail sent from Christine DeLoach to Mijn Park and Ms. Ernesti on April 5, 2017 (found on BOE 428), Ms. DeLoach requests a legal opinion and advice as what legal action that should be taken in response to plaintiff's actions. This e-mail is covered by the attorney-client privilege and it need not be produced.

litigation risk and legal strategy" were privileged. *Id.,* at 453-54. The e-mail communications in this case are analogous to the non-privileged information in *Kodish* and the e-mails (with the one noted exception) contain no discussion about "potential litigation risk" or "legal strategy." Similarly, in *Marusiak v. Adjustable Clamp Co.,* No. 01 C 6181, 2003 WL 2321311 (N.D.Ill. June 5, 2003), the court held that an attorney's legal advice based on his review and study of a legal document in response to defendant's request for that legal advice was protected by the attorney-client privilege. *Id.,* at *2; *see also Stafford Trading, Inc. v. Lovely,* No. 05 C 4868, 2007 WL 611252 at *7 (N.D.Ill. Feb. 22, 2007) (limiting attorney-client privilege to communications with counsel for the purpose of obtaining or providing legal advice); *Weeks v. Samsung Heavy Industries, Ltd.,* No. 93 C 4899, 1996 WL 288511 at *2 (N.D.Ill. May 30, 1996) (finding that law firm's billing statement that reflected firm's role as defendant's "professional legal advisor" was privileged).

Third, the e-mail chains in question do not bear the indicia of communications that are intended to be protected by the attorney-client privilege. For example, the e-mails do not expressly state that Ms. Ernesti is an attorney or that she was conveying information to the other members of the Board's management in her capacity of an attorney. *See Sigler,* 2009 WL 10698890 at *3. Rather, the e-mails reflect that Ms. Ernesti was acting in her non-legal capacity as the Director of the Office of Employee Engagement (*see* BOE 367). Moreover, these e-mails do not state or reflect that they are confidential communications because they contain attorney-client privileged communications and they do not warn the recipients to maintain the e-mails in confidence because they contain privileged communications. *Sigler,* 2009 WL 10698890 at *3.

Finally, a number of the e-mails in question were prepared by non-attorneys and sent to other non-attorneys and Ms. Ernesti for simultaneous review or were addressed to other non-

attorneys with a copy to Ms. Ernesti. As such, it cannot be said that the primary purpose of these e-mails was to secure legal advice. *See, e.g., U.S. v. Cohn,* 303 F.Supp.2d 672, 684-85 (D.Md. 2003); *Neuder,* 194 F.R.D. at 295; *Pacamor Bearings, Inc. v. Minehea Co., Ltd.,* 918 F.Supp. 491, 511 (D.N.H. 1996). Documents sent from one corporate officer to another are not privileged merely because a copy is also sent to counsel. *BDO USA,* 876 F.3d at 696.

In sum: the Court finds that the Board has failed to meet its burden of establishing that the e-mails in question (with the exception of the e-mail noted above in footnote 2) are protected by the attorney-client privilege.

II. **The Board Has Failed To Meet Its Burden Of Showing That The Work Product Doctrine Shields The E-Mails From Disclosure**

The Board also asserts that many of the e-mails that were prepared between March 3, 2017 and March 24, 2017 are protected from disclosure by the work product privilege. "The work product doctrine protects documents that an attorney or a representative of a party prepares in anticipation of litigation in order to prepare or analyze a client's case." *MSTG, Inc. v. AT & T Mobility LLC,* No. 08 C 7411, 2011 WL 221771, at *2 (N.D.Ill. Jan. 20, 2011) (citing to *Sandra T.E. v. S. Berwyn School District 100,* 600 F.3d 612, 618 (7th Cir. 2010)). The work product doctrine

> does not apply if the prospect of future litigation was remote at the time the document was created. . . . The mere fact that litigation does eventually ensue does not by itself, cloak materials prepared by attorney . . . . Instead, the work product doctrine applies only when there was an identifiable prospect of litigation because of specific claims that have arisen. . . . To identify work product, courts are directed to determine whether in light of the factual context the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation [3] . . . . Materials created in the ordinary course of business which may have the incidental effect of being helpful in litigation are not privileged under the work product doctrine.

---

[3] To this point, documents that would have been created irrespective of litigation are not considered to be work product. *Caremark, Inc. v. Affiliated Computer Services, Inc.,* 195 F.R.D. 610, 614 (N.D.Ill. 2000).

*RBS Citizens,* 291 F.R.D. at 217 (internal quotation marks and citations omitted). Furthermore, a party claiming that a document is work product must show that the document was prepared because of the party's subjective anticipation of litigation, as opposed to an ordinary business purpose, and that the subjective anticipation was objectively reasonable. *Leazure v. Apria Healthcare Inc.,* No. 1:09-CV-224, 2010 WL 3895727 at * 3 (E.D.Tenn. Sept. 30, 2010). Finally, the Board has the burden of showing that the work product doctrine should apply. *MSTG, Inc.*, 2011 WL 221771, at *2.

In this case, the e-mails that the Board asserts are protected by the work product doctrine were sent prior to the date (April 3, 2017) when the Board placed plaintiff on the PIP. At the time these e-mails were sent, the Board's "intent was for Plaintiff to remain an employee and improve her performance." Dkt. 72, at 3. The Board does not argue that it subjectively expected to become involved with litigation with plaintiff prior to the date that it issued the PIP to her. Instead, the Board states that "how Plaintiff would react to any type of discipline was unknown and could lead to litigation, and in fact, did." Dkt. 72, at 8. This is insufficient to meet the Board's burden. The Court finds that the prospect of litigation prior to the issuance of the PIP was remote. Most employees would not sue their employer simply because they received a PIP, particularly where (as here) the employer desired for the employee to remain on its payroll. Moreover, the Board has offered no evidence that it would have been objectively reasonable for it to anticipate litigation because it issued a PIP to this particular employee. The fact that litigation ultimately ensued does not cloak the pre-PIP e-mails with protection by the work product doctrine. *See RBS Citizens,* 291 F.R.D. at 217. Consequently, for these reasons, the

Court finds that the March 3, 2017 through March 24, 2017 e-mails are not protected by the work product doctrine because they were not prepared in anticipation of litigation. [4]

## CONCLUSION

For all of the above reasons, the Court grants in part and denies in part plaintiff Keesha Smith's motion for *in camera* inspection of documents and to compel production of documents withheld or redacted on the basis of work product or attorney client privilege. [65]. The Board is hereby ordered to produce unredacted copies of the e-mails identified on its amended first privilege log (with the exception of the April 5, 2017 e-mail identified in footnote 2, *supra*) on or before the close of business on June 25, 2019.

**Jeffrey Cummings**
**United States Magistrate Judge**

**Dated: June 19, 2019**

---

[4] Plaintiff concedes that documents prepared after she referenced her attorney on April 4, 2017 would have been prepared by the Board in anticipation of litigation. Dkt. 73, at 3. However, the Board has waived its right to assert that the work product doctrine protects any of the documents prepared on or after April 4 by failing to assert in its first amended privilege log that the doctrine protects these documents. Dkt. 72-1, at 3; *Stafford Trading,* 2007 WL 611252 at *7.